NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LINDA G., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civil Action No. 22-5640 (RK) <br><br> **OPINION** |

**KIRSCH, District Judge**

    **THIS MATTER** comes before the Court upon Plaintiff Linda G.'s ("Plaintiff")[1] appeal from the Commissioner of the Social Security Administration's (the "Commissioner") final decision, which denied Plaintiff's request for disability insurance benefits. (ECF No. 1.) The Court has jurisdiction to review this appeal under 42 U.S.C. § 405(g) and reaches its decision without oral argument pursuant to Local Civil Rule 78.1. For the reasons below, the Court **VACATES** the Commissioner's decision and **REMANDS** this matter for further proceedings.

**I.     BACKGROUND**

    In this appeal, the Court answers two questions. *First,* did the Administrative Law Judge ("ALJ") offer sufficient evidentiary rationale to support her finding at Step Two that the Plaintiff's obesity, post-surgical arthritic knee, and diabetes did not rise to the level of severe impairments? *Second,* did the ALJ offer sufficient evidentiary rationale with regard to the Step Three medical

---

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

equivalence analysis, particularly with regard to her evaluation of the psychiatric evidence and whether the combination of Plaintiff's limitations rose to the level of a Listed impairment?

A.  **PROCEDURAL POSTURE**

Plaintiff filed an application for a period of disability and disability insurance benefits on August 30, 2019, alleging an onset date of September 18, 2019. (Administrative Record ("AR") at 15, 69, 82.)[2] The Social Security Administration (the "Administration") denied the request both initially and on reconsideration. (*Id.*) Plaintiff requested a hearing before an ALJ. (*Id.* at 94–95.) At a telephonic hearing on February 28, 2022, the ALJ heard testimony from Plaintiff, who was represented by counsel, and a vocational expert. (*Id.* at 32–59.) On March 9, 2022, the ALJ issued a written decision finding Plaintiff was not disabled. (*Id.* at 12–31.) The Administration's Appeals Council denied Plaintiff's request to review the ALJ's decision. (*Id.* at 1–6.) This appeal followed. (ECF No. 1.) The Administrative Record was filed on November 10, 2022, (ECF No. 4), Plaintiff filed her moving brief on September 27, 2023, (ECF No. 13), and the Commissioner filed an opposition brief on November 27, 2023, (ECF No. 18).

B.  **THE ALJ'S DECISION**

In her March 9, 2022 opinion, the ALJ found that Plaintiff was not disabled under the prevailing Administration regulations. (*See generally* AR at 12–31.) To reach this decision, the ALJ applied the five-step process for determining whether an individual is disabled as set forth in 20 C.F.R. § 404.1520(a). (*Id.* at 16–25.) At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, September 18, 2019. (*Id.* at 17 (citing

---

[2] The Administrative Record ("Record" or "AR") is available at ECF No. 4-1 through 4-8. This Opinion will reference only page numbers in the Administrative Record without the corresponding ECF numbers. Page numbers for all other cites (i.e., "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

2

20 C.F.R. § 404.1571 *et seq.*).) At Step Two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease of the cervical spine, bilateral carpal tunnel syndrome, degenerative joint disease of the bilateral shoulders, anxiety, posttraumatic stress disorder ("PTSD"), and a major depressive disorder. (*Id.* at 17–18 (citing 20 C.F.R. § 404.1520(c)).) The ALJ found that Plaintiff's "obesity, hypertension, hyperlipidemia, diabetes mellitus and status-post arthroscopic knee surgery" did not, alone or in combination with other impairments, significantly limit Plaintiff's ability to perform basic work activities and therefore "these conditions [did] not significantly impair her." (*Id.* at 17–18.)

At Step Three, the ALJ determined that Plaintiff did not have "an impairment or combination of impairments" that qualified under the Administration's listed impairments. (*Id.* at 18–19 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).) The ALJ found that Plaintiff's musculoskeletal impairments, PTSD, anxiety, and depression have not consistently met or equaled the level of severity contemplated in the relevant listings. (*Id.* at 18.) In assessing the paragraph B criteria related to the disability regulations for evaluating mental disorders, the ALJ found that Plaintiff "has moderate limitations of understanding, remembering, or applying information; moderate limitations interacting with others; moderate limitations concentrating, persisting, or maintaining pace; and moderate limitations adapting or managing herself." (*Id.* (citing 20 C.F.R. Part 404 Subpart P, Appendix 1).) In making her findings, the ALJ relied on Plaintiff's function reports, (Exs. 7E, 15E[3]) and, with regard to her functional ability to interact with others, practitioners' impressions of the Plaintiff at "the various treating and consultative examinations" Plaintiff attended related to filing for disability. (*Id.* at 18.)

---

[3] The Court will adopt the exhibit references as cited in the ALJ's opinion.

At Step Four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work:

> [S]he can do frequent overhead reaching bilaterally, and frequent handling and fingering bilaterally. She can occasionally climb ramps and stairs, balance, stoop, kneel and crouch. She can never climb ladders, ropes, or scaffolds or crawl. She must avoid all exposure to hazards such as unprotected heights and moving mechanical parts. She retains the ability to carry out simple routine tasks on a continuous basis, with simple instructions and simple work-related decisions. She can do no assembly line pace work or production rate pace work. She is able to tolerate occasional changes in the work setting and work processes.

(*Id.* at 20–25 (citing 20 C.F.R. § 404.1567(b).) The ALJ made this determination "after careful consideration of the entire record." (*Id.* at 20.)

In determining Plaintiff's RFC, the ALJ relied on medical records from treatment of Plaintiff's workplace injuries including surgeries for injuries to her knee and shoulders, as well as carpal tunnel syndrome and neck pain. (*Id.* at 21 (citing Exs. 1F–6F).) The ALJ also reviewed a treatment report from Plaintiff's family physician Dr. Jacqueline Zuckerbrod and orthopedic evaluations and an MRI scan from treating orthopedic surgeons Drs. Franklin Chen and Manisha Chahal. (*Id.* (citing Exs. 9F, 13F, 18F).) The ALJ assessed that "[t]he reports from Drs. Zuckerbrod, Chen and Chahal indicate [Plaintiff's] musculoskeletal condition has improved with surgeries and follow-up treatments." (*Id.* at 22.) The ALJ further reviewed the findings of Dr. Ronald Badger, who examined Plaintiff on the Administration's behalf on February 28, 2020. (*Id.*) The ALJ wrote, "Dr. Badger's clinical findings are consistent with a range of light work, with postural limitations, and with frequent overhead reaching bilaterally, and frequent handling and fingering bilaterally." (*Id.* (citing Ex. 12F).)

4

Regarding Plaintiff's mental impairments, the ALJ reviewed the treatment notes from a licensed social worker[4] who treated Plaintiff at Adults and Children Behavioral Counseling Center. (*Id.*) The social worker diagnosed "anxiety, an adjustment disorder, and PTSD." (*Id.* (citing Ex. 7F).) The ALJ further reviewed notes from Nurse Practitioner ("NP") Ngozi Nwobi, who diagnosed Plaintiff with major depressive disorder and maintained her on Cymbalta and Xanax. (*Id.* (citing Ex. 14F).) While the ALJ reviewed NP Nwobi's treatment notes from July 9, 2018 through May 12, 2020, she did not specifically discuss any entries from either set of psychological treatment notes. The ALJ determined that the Global Assessment of Functioning ("GAF") score of Plaintiff administered by NP Nwobi was "not persuasive" due to changed perceptions and regulations around the use of the GAF score in disability assessments. (*Id.* at 23 (citing 20 C.F.R. § 404.1527(e)).)

The ALJ then reviewed findings from a state agency medical consultant who reviewed the record at the Administration's request during the reconsideration determinations. The consultant found "that, in an eight-hour workday, the claimant could sit for a total of about six hours, stand/walk for a total of about six hours, and lift/carry a total of twenty pounds occasionally, and ten pounds frequently, which is consistent with light work." (*Id.* (citing Ex. 3A).) The consultant found "no postural or manipulative limitations." (*Id.*) Regarding Plaintiff's mental impediments, the consultant found: (1) moderate limitations of understanding, remembering, or applying information; (2) mild limitations in interacting with others; (3) mild limitations concentrating, persisting, or maintaining pace; (4) mild limitations adapting or managing herself. (*Id.* (citing Ex. 3A).) The consultant found no severe psychiatric impairment. (*Id.*) The ALJ found the consultant's

---

[4] The social worker's name was illegible in the treatment notes and was not provided in the ALJ's report.

5

opinion "only somewhat persuasive, as the preponderance of the evidence is consistent with light work, but not wholly persuasive because the updated evidence establishes manipulative limitations, and moderate 'B criteria' limitations." (*Id.* (citing 20 C.F.R. § 404.1527(e)).)

Finally, the ALJ considered Plaintiff's own testimony, and found "while the claimant may experience some subjective degree of pain and other symptoms, they are not of such severity, frequency, or duration as to preclude the performance of unskilled light work, with postural limitations, involving simple routine tasks with occasional changes in the work setting and work processes." (*Id.*) The ALJ found that while "the [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms" the Plaintiff's statement's "concerning the intensity, persistence and limiting effects of these symptoms are not fully supported." (*Id.* at 24.) This evidence included reports that "the physical treatment reflects the claimant had experienced an improvement in her symptoms since the surgeries [prior to the onset date]." (*Id.* (citing Ex. 19F).) Further, the ALJ reviewed a March 23, 2020 MRI scan of Plaintiff's cervical spine, (Ex. 13F), and a November 26, 2021 MRI scan of Plaintiff's right shoulder, (Ex. 18F), finding "[t]his is not a level of pathology normally associated with a disabling musculoskeletal impairment." (*Id.*)

The ALJ found that the Plaintiff's mental limitations "are severe but not work preclusive as the claimant has not been recommended inpatient treatments or hospitalization, and the record does not support any crisis calls, crisis interventions, or emergency room visits related to any mental health condition." (*Id.* at 25.) The ALJ also assessed "neither [Plaintiff's] physical nor mental impairments cause more than moderate limitations in her activities of daily living." (*Id.*) Finally, the ALJ assessed that the Claimant's obesity, which was "at the low end of level I on October 30, 2019, and more recently below it" as she had lost a significant amount of weight, and

6

found that it did not contribute to Plaintiff's vocational limitations or severely impair her. (*Id.* (citing Social Security Ruling ("SSR") 19-2p).)

Based on testimony from the impartial vocational expert present at the hearing who was given a hypothetical worker with Plaintiff's RFC, at the final part of Step Four the ALJ found that Plaintiff "is capable of performing past relevant work as a toll taker." (*Id.* at 25 (citing 20 C.F.R. § 505.1565).) The ALJ concluded that Plaintiff was not disabled under the Social Security Act from September 18, 2019. (*Id.* (citing 20 C.F.R. § 404.1520).)

This appeal concerns the specificity of the ALJ's evidentiary rationale at Steps Two, Three, and Four of the disability analysis.

## II.   LEGAL STANDARD

### A.   STANDARD OF REVIEW

The Court reviews the "final decision of the Commissioner of Social Security" to determine whether the Commissioner's findings are "supported by substantial evidence." 42 U.S.C. § 405(g). In the event that the Appeals Council denies a claimant's request for review, "the ALJ's decision is the Commissioner's final decision." *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001) (citation omitted). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). Put differently, "[i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). This evidentiary threshold "is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

The scope of the Court's review of the ALJ's decision is "quite limited." *Id.* On review the Court may not "re-weigh the evidence or impose [its] own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently." *Fargnoli v. Massanari,* 247 F.3d 34, 38 (3d Cir. 2001) (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)).

B.  **ESTABLISHING ELIGIBILITY FOR DISABILITY INSURANCE BENEFITS**

A claimant may establish disability under the Social Security Act by proving they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ applies a well-established "five-step sequential evaluation process," which requires considering whether the claimant:

> (1) is engaged in substantial gainful activity; (2) suffers from an impairment or combination of impairments that is "severe"; (3) suffers from an impairment or combination of impairments that meets or equals a listed impairment; (4) is able to perform his or her past relevant work; and (5) is able to perform work existing in significant numbers in the national economy."

*McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citing 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f)). The claimant bears the burden at the first four steps, at which point it shifts to the Commissioner at Step Five. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019).

8

### III. DISCUSSION

Plaintiff appeals the Administration's Appeals Council's affirmance of the ALJ's decision. She argues that the ALJ's determinations at Step Two, Step Three, and Step Four's RFC determination are deficient in a way that precludes meaningful judicial review.

The Court will address the Step Two and Step Three arguments in turn. However, because the Court agrees the ALJ's analysis in Step Three is not sufficiently supported, the Court does not reach Plaintiff's remaining challenge with respect to the ALJ's Step Four RFC determination. *See, e.g.*, *Vivaritas v. Comm'r of Soc. Sec.*, 264 F. App'x. 155, 157 (3d Cir. 2008) (determining the Third Circuit panel should not reach challenges to Steps Four and Five since remand of the ALJ's decision at an earlier step of the sequential evaluation would cause further development of the record and decision); *see also Ingandela v. Kijakazi*, Civ. No. 20-08033, 2022 WL 154422, at *9 (D.N.J. Jan. 18, 2022) (declining to reach Plaintiff's remaining challenges to an ALJ's decision "[b]ecause the ALJ's decision on remand may make consideration of steps four and five of the sequential evaluation necessary.").

#### A.   STEP TWO

Plaintiff's initial argument is that although the ALJ found six severe impairments, she erred in the portion of her analysis where she found Plaintiff's obesity, post-surgical arthritic knee, and diabetes were not severe. (ECF No. 13 at 11 (citing AR at 17).) Plaintiff does not necessarily dispute the ALJ's findings. Rather, "[t]he ALJ error here is not that the finding cannot be defended under the evidence, the error is that the finding isn't defended by any evidence." (*Id.* at 12.) The Commissioner contends substantial evidence supports that Plaintiff's obesity, knee impairment, and diabetes "alone and in combination did not result in significant work-related limitations." (ECF No. 18 at 11-12.) Further, the Defendant argues that the Step Two finding had no bearing on

9

the outcome of the claim, as the ALJ resolved Step Two in Plaintiff's favor by finding at least one severe impairment and proceeded on to the next steps. (*Id.* at 12.)

Step Two is a threshold analysis which determines if the ALJ should continue to evaluate Plaintiff's claims for disability. "In effect, the inquiry at Step Two functions as a *de minimus* screening device to dismiss unfounded claims." *Bouchard v. Colvin*, No. 13-5283, 2014 WL 7011190, at *4 (D.N.J. Dec. 11, 2014) (citing *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003)). A medically determinable impairment is one that "result[s] from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques" and "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [Plaintiff's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908. According to the Commissioner's regulations, "an impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities." *Newell*, 347 F.3d at 546 (citations omitted); 20 C.F.R. §§ 404.1520(c), 404.1521(a).

In this case, Plaintiff offers no evidence from the record that Plaintiff's obesity or knee impingement limited her abilities to do work activities during the period in question. As the ALJ noted, these conditions predated the alleged onset date by more than a decade, during which the Plaintiff was working. (AR at 21.) Further, the Court disputes Plaintiff's contention that "[n]o reason is given and no discussion is offered" regarding the ALJ's severity determination for the obesity and post-surgical arthritic knee. (*Id.* at 11–12.) First, the ALJ discussed Plaintiff's previous low-level obesity throughout the decision. (*Id.* at 17, 21, 25.) Notably, Plaintiff was no longer considered medically obese at the time of the decision. (*Id.* at 17–18.) Plaintiff does not identify evidence in the record that obesity limited Plaintiff's activities during the period in question or

10

objective medical evidence that it would in the future. Second, according to the medical records submitted to the court, Plaintiff did not receive medical treatment for her knee during the relevant period. Dr. Bagner's assessment found Plaintiff's post-surgical knee was "stable" and "showed a normal range of movement." (*Id.* at 22 (citing Ex. 12F).)

The medical record shows some historical symptoms related to Plaintiff's diabetes. Ex. 8F notes that on October 30, 2019 Plaintiff presented with "Diabetes type 2 with nephropathy"[5] and "Type 2 diabetes with hyperglycemia." (*Id.* at 488, 492.) In the October 2019 medical records, i.e. the records closest to Plaintiff's alleged onset date, "[d]iabetes mellitus without mention of complication" is listed as a "historical" diagnosis rather than a current one. (*Id.*) On March 12, 2019, Exhibit 8F's treatment notes show that Dr. Zuckerbrod "advised [Plaintiff] that she . . . needs to deal w[ith] potential sequelae[6] of poorly controlled [diabetes mellitis]." (*Id.* at 518.) Laboratory results from May 21, 2018 show Plaintiff was diagnosed with chronic kidney disease ("CKD") stage 3a. (*Id.* at 548.) Given the treatment notes stating Plaintiff was diagnosed with diabetes causing kidney damage, the CKD was likely one of the "sequelae" Dr. Zuckerbrod noted it was important to warn Plaintiff about. (*Id.* at 488, 492, 548.)

However, Plaintiff still does not provide any evidence to the Court that the classification of her diabetes as non-severe was in error. (*Id.* at 14–15.) "'[D]iagnoses alone are insufficient to establish their severity at Step Two'" and Plaintiff still has not "explained how [her diabetes] significantly limited her ability to perform basic work activities." *Watson v. Saul*, No. 17-11734, 2021 WL 165098, at *12 (D.N.J. Jan. 19, 2021) (quoting *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 (3d Cir. 2007)) (non precedential).) SSR 14-2p directs that in determining whether

---

[5] As discussed below, diabetic nephropathy is damage to the kidney caused by diabetes.
[6] Medical sequelae are conditions resulting as the consequence of a disease.

11

diabetes mellitus is a severe medically determinable impairment ("MDI"), it "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by a statement of symptoms." SSR 14-2p; Titles II & Xvi: Evaluating Diabetes Mellitus (June 2, 2014). Plaintiff has not provided such evidence here.

Moreover, even in cases with demonstrated error at Step Two, district courts typically do not remand decisions where the ALJ found at least one MDI and continued with the sequential disability analysis. *See Salles*, 229 F. App'x at 145 n.2 ("Because the ALJ found in [claimant's] favor at Step Two, even if he had erroneously concluded that some of [his] other impairments were non-severe, any error was harmless." (citing *Rutherford*, 399 F.3d at 553)); *Theresa S. v. Kijakazi*, No. 21-19997, 2022 WL 17959581, at *12–13 (D.N.J. Dec. 27, 2022) ("[E]ven if the ALJ's determination that [claimant's] diabetes is not severe was in error, it would be a harmless error because the ALJ did not decide against [claimant] at Step 2."). Thus, assuming arguendo there were error in the ALJ's analysis of the severity of Plaintiff's diabetes, which the Court does not find, such error would not warrant a remand.

### B.   STEP THREE

At Step Three, an ALJ considers whether the combination of the claimant's MDIs meets or equals the severity of any one of the impairments in the Listing of Impairments. 20 C.F.R. § 404.1520(a)(4)(iii). An impairment meets a listed impairment if it satisfies "'all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.'" *Jones v. Barnhart*, 364 F.3d 501, 504 (3d Cir. 2004) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Zebley*, 493 U.S. at 531. "[T]he medical

12

criteria defining the listed impairments [are set] at a higher level of severity than the statutory standard" because the "listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" *Id.* at 532 (quoting 20 C.F.R. § 416.925(a)).

While the ALJ is not required to "use particular language or adhere to a particular format" nor "make reference to every relevant treatment note in a case," she must ensure "sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505 (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d. Cir. 2000)); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001). It is well-settled that this "requires more than just a conclusory statement that a claimant does not meet the listings." *Burnett*, 220 F.3d at 119.

The ALJ's decision in Step Two found three severe exertional (physical) impairments and three severe non-exertional (mental) impairments: (1) degenerative disc disease of the cervical spine; (2) bilateral carpal tunnel syndrome; (3) degenerative joint disease of the bilateral shoulders; (4) anxiety; (5) PTSD; and (6) major depressive disorder. (AR at 17 (citing 20 C.F.R. § 404.1520(c)).) In Step Three, the ALJ determined that none of these impairments or combinations of impairments "meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Subpart P, Appendix 1." (*Id.* at 18 (citing 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526).)

    *1.*    *The ALJ's Step Three Analysis – Listings of Physical Impairments*

Regarding Plaintiff's three exertional, or physical impairments, the ALJ found, "[t]he claimant's musculoskeletal impairments have not consistently met or equaled the level of severity contemplated in Section 1.15, 1.16 or 1.18 of the listing of impairments." (AR at 18.)

The Court agrees that Plaintiff has not sufficiently demonstrated that she actually met the criteria for the above listing. Defendant correctly notes that Plaintiff "does not explain how her medical conditions satisfy all the criteria of any particular Listing, nor does she identify any evidence in support of her argument." (ECF No. 18 at 16.)

The three musculoskeletal impairments reviewed by the ALJ at Section 1.15, 1.16 and 1.18 all include a requirement that a disability claimant show "[i]mpairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 months" and that claimant provide medical documentation of "at least one of the following": (1) "[a] documented medical need . . . for a walker, bilateral canes, or bilateral crutches . . . or a wheeled and seated mobility device involving the use of both hands . . ."; (2) "[a]n inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements . . . and a documented medical need . . . for a one-handed, hand-held assistive device . . . that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand"; or (3) "[a]n inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements . . ." 20 C.F.R. Part 404 Subpart P, Appendix 1.

There is no evidence in the medical record which demonstrates that Plaintiff met the above requirements for use of medical assistive devices or any claim that the Plaintiff cannot use her extremities to the extent described in the criteria. In contrast, the Court finds the ALJ's finding at Step Three regarding Plaintiff's musculoskeletal impairments was supported by substantial evidence in the record that Plaintiff did not meet the above requirements. Plaintiff has not shown any colorable harm resulting from any error and "offers no explanation of how further analysis

could have affected the outcome" of the ALJ's decision. (ECF No 18 at 16-17 (quoting *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016)).) Because the Plaintiff has not argued she can meet the Listing Criteria, any error is harmless. *See Lopez v. Comm'r of Soc. Sec.*, No. 17-8461, 2020 WL 3118748, at *2 (D.N.J. June 12, 2020) ("[E]ven if Plaintiff succeeded in persuading that the ALJ erred at step three, Plaintiff also bears the burden of showing that this error was harmful, and Plaintiff has not done so." (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009))).

### 2. The ALJ's Step Three Analysis – Listings of Mental Impairments

At Step Three the ALJ also found Plaintiff's "PTSD has not consistently met or equaled the level of severity contemplated in Section 12.15, her anxiety has not consistently met or equaled the level of severity contemplated in Section 12.06, and her depression has not consistently met or equaled the level of severity contemplated in Section 12.04 of the listing of impairments." (AR at 18.) To meet Listing 12.04, 12.06, or 12.15, a claimant must meet the Listing's Paragraph A criteria and, additionally, the criteria of either Paragraph B or Paragraph C. 20 C.F.R. Part 404 Subpart P, Appendix 1 §§ 12.04, 12.06, 12.15. "Paragraph B criteria are met when a claimant has an extreme limitation of one, or a marked[7] limitation of two, of the following four mental functional areas: the ability to understand, remember, or apply information; the ability to interact with others; the ability to concentrate, persist, or maintain pace; and the ability to adapt or manage oneself." *Ingandela*, 2022 WL 154422, at *11 (citing 20 C.F.R. Part 404 Subpart P, Appendix 1, §§ 12.04, 12.06, 12.15). Further, the Paragraph C criteria are met,

---

[7] The effects of mental disorders are evaluated on a five-point rating scale. Under these listings, "extreme limitation" means a claimant is "not able to function in this area independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Part 404 Subpart P, Appendix 1. A "marked limitation" means a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." *Id.*

>    if the claimant's mental disorder is 'serious and persistent[,]' i.e., the claimant has a medically documented history of the existence of the disorder over a period of at least two years and there is evidence of both of the following: (1) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of the claimant's mental disorder; and (2) marginal adjustment, i.e., the claimant has minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of his or her daily life.

(*Id.*) (internal quotation omitted).

Here, the ALJ found "the claimant has moderate limitations of understanding, remembering, or applying information; moderate limitations interacting with others; moderate limitations concentrating, persisting, or maintaining pace; and moderate limitations adapting or managing herself." (AR at 18–19.) The ALJ also found "the evidence fails to establish the presence of the 'paragraph C' criteria" because "[t]he record does not establish that the claimant has only marginal adjustment, that is, a minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the claimant's daily life." (*Id.* at 19.)

Plaintiff argues the ALJ's analysis of Plaintiff's mental impairments was flawed because it primarily relied on Plaintiff's self-assessment in her Function Reports at Exhibits 7E and 15E, rather than the psychological medical evidence in the record from Plaintiff's treating social worker and NP. (ECF No. 13 at 22 (citing AR at 18–19, 22–24).) Plaintiff also complains the ALJ did not address all symptoms in those function reports, some of which could suggest the Plaintiff meets the paragraph B criteria. (*Id.* at 22–23.)

The Court agrees that the ALJ did not sufficiently address the basis of her findings of "moderate" limitations in any of the four basic functional areas in the decision, even when the decision is read as a whole. In her assessment of Plaintiff's RFC at Step Four, the ALJ addresses a Global Assessment of Functioning ("GAF") exam administered by NP Nwobi in her RFC

assessment, finding the GAF score is "not persuasive." (AR at 23.) However, the ALJ does not sufficiently address the remaining voluminous psychological treatment notes in the record at Exs. 7F or 14F. (*See generally* AR 17–25.) More specifically, the ALJ fails to adequately address her assessment of Plaintiff's psychological diagnostics, diagnoses, and treatment notes on the record other than the GAF, or explain how the ALJ weighed them in reaching her assessment of "moderate" limitations in each of the four areas of broad functioning.

Both NP Nwobi and the Plaintiff's social worker reference that Plaintiff's PTSD, anxiety, and depression impact her functioning in various ways. (Exs. 7F and 14F.) For example, NP Nwobi's treatment notes reference panic attacks, sleeping issues, and feelings of anxiety; however, the treatment notes also state Plaintiff's "behavior is generally appropriate" and "there are no signs of thought disorder . . . [and] thinking is generally logical." (Ex. 14F, AR at 649.) The social worker's notes also reference sleep issues, symptoms of anxiety including racing thoughts, and bouts of depression including suicidal ideation (Ex. 7F, AR at 462, 463), but list Plaintiff's dress/ grooming as "good", her attitude as "cooperative", and that there is no assessed danger (*id.* at 462).

The Court might agree with the ALJ's conclusion that based on such evidence, Plaintiff's mental impairments moderately impact functioning. However, without further analysis as to why the medical providers' treatment notes supported such a conclusion (for example, such treatment notes included contradictory statements), the ALJ's conclusory language leaves the Court limited in its reviewing function. *See Burnett*, 220 F.3d at 119.[8] The ALJ on remand must address how she weighed the psychological medical evidence and why she found Plaintiff's Function reports more persuasive as related to her analysis of the Plaintiff's mental limitations as applied in both

---

[8] Defendants' also note that Plaintiff saw a nurse and a social worker, not a psychiatrist or psychologist who reported significant limitations. (AR at 19.) However, licensed advance practice nurses, like NP Nwobi, are considered acceptable medical sources along with psychiatrists and psychologists, under 20 C.F.R. § 416.902(a)(7).

the paragraph B and paragraph C analyses. Further, while the ALJ may evaluate and weigh the other physicians' assessment of Plaintiff's demeanor while performing physical assessments, doing so does not obviate the ALJ's obligation to also weigh the treating medical providers' psychological assessments. *See Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). As a result, the Court is constrained to remand on the specific issue that the ALJ further explain her assessment of Plaintiff's mental impairments at Step Three.

### 3. *Failure to Consider the Impairments in Combination*

Further, the ALJ did not sufficiently analyze whether the combination of Plaintiff's six severe medically discernable impairments equaled the level of severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. The Commissioner's Regulations state, "[i]f you have a combination of impairments, no one of which meets a listing . . . we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairments are at least of equal medical significance to those of a listed impairment, we will find that your combination of impairments is medically equivalent to that listing." 20 C.F.R. § 404.1526(b)(3).

The ALJ's sole reference to the requirement to "combine and compare" is the conclusory finding that the impairments did not equal a listing. "Such conclusory statements are grounds for remand." *Villanueva v. Comm'r of Soc. Sec.*, Civ. No. 19-16634, 2020 WL 6384198, at *4 (D.N.J. Oct. 30, 2020) (citing *Burnett*, 220 F.3d at 119). While Defendant argues that it was enough that "the ALJ explicitly stated that she considered all of Plaintiff's impairments in combination," the Court disagrees. (ECF No. 18 at 16.)

"[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*,

650 F.2d 481, 482 (3d Cir. 1981). "[A]bsent such articulation, the Court 'cannot tell if significant probative evidence was not credited or simply ignored.'" (ECF No. 13 at 18 (citing *Cotter*, 642 F.2d at 705).) In particular, the Court cannot determine here if the Plaintiff's mental limitations were assessed in combination with one another as required by the Third Circuit. *See, e.g., Morrison ex rel. Morrison v. Comm'r of Soc. Sec. Admin.*, 268 F. App'x 186, 189 (3d Cir. 2008).

In conclusion, the Court finds the ALJ's Step Three analysis warrants remand of this matter for additional explanation. First, the ALJ did not sufficiently explain her consideration of the psychological medical evidence related to Plaintiff's mental impairments. Second, the ALJ did not sufficiently support her analysis of whether Plaintiff's severe impairments would, in combination, rise to the level of a Listed impairment. *Granados v. Comm'r of Soc. Sec. Admin.*, Civ. No. 13-0781, 2014 WL 60054, at *9 (D.N.J. Jan. 7, 2014); *see also Torres v. Comm'r of Soc. Sec.*, 279 F. App'x 149, 152 (3d Cir. 2008). "[B]ecause we have no way to review the ALJ's . . . step three ruling, we will vacate and remand the case for a discussion of the evidence and an explanation of reasoning supporting a determination" that Plaintiff's six severe impairments do not meet or in combination are not equivalent to a listed impairment. *Burnett*, 220 F.3d at 120.

## CONCLUSION

Having reviewed the record as a whole, the Court **VACATES** the Commissioner's decision and **REMANDS** this matter for further consideration consistent with this opinion. The Court will issue an order consistent with this Opinion.

**ROBERT KIRSCH**  
**UNITED STATES DISTRICT JUDGE**

Dated: April 10, 2023